808 P.2d 373

**Edward L. PELTIER,
Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 17214.**

Supreme Court of Idaho,
Boise, December 1989 Term.

Feb. 27, 1991.

Rehearing Denied April 19, 1991.

Churchill & Vander Boegh, Boise, for petitioner-appellant. Lance D. Churchill, argued.

Jim Jones, Idaho Atty. Gen., Myrna A.I. Stahman (argued), Deputy Atty. Gen., Boise, for respondent.

BOYLE, Justice.

In this case involving the summary dismissal of a petition for post-conviction relief, we are called upon to determine whether Edward Peltier's rights were violated when the district court found that he had violated the terms of his probation and imposed a twenty-year sentence.

In post-conviction proceedings filed May 21, 1986, Peltier sought relief on the ground that the district court erroneously increased his original sentence from five years to twenty years following an alleged probation violation, and on various due process grounds alleging that his probation violation hearing was unfair.[1] The district court initially scheduled a hearing on Peltier's petition for post-conviction relief, however, pursuant to the State's motion, the district court reconsidered and on October 2, 1987, found that the request for post-conviction relief was without merit

and dismissed Peltier's petition without a hearing. It is from this order summarily dismissing his request for post-conviction relief that Peltier appeals.

## I.

## FACTS

In May, 1982 Peltier plead guilty to a charge of lewd and lascivious conduct in violation of I.C. § 18–6607. When sentence was pronounced on June 23, 1982, the district court orally stated that it was withholding judgment for five years and placing Peltier on probation. The written Order Withholding Judgment and Order of Probation filed the next day, June 24, 1982, contained similar language.

Thereafter, in 1982, the Department of Health and Welfare filed a petition to obtain custody of Peltier's minor children based upon the accusation that one of the children, Brandon, had been sexually abused by Peltier. A hearing was held and the magistrate court issued a memorandum decision on February 11, 1983, finding that the alleged sexual abuse had occurred and it was in the best interests of the three Peltier children that legal custody be awarded to the Department of Health and Welfare.

On March 9, 1983, a probation violation hearing was held before the district court. It is argued on appeal by Peltier that his attorney, without his consent or authority, stipulated to the admission of the magistrate's findings from the child custody proceedings in the March 9, 1983 probation violation hearing. Unfortunately, the transcript of the March 9, 1983 probation violation hearing is not contained in the record.[2]

---

1. All sentencing and probation violation hearings held between 1982 and 1985 were before District Judge John Maynard. Thereafter, District Judge E.B. Ponack presided over the post-conviction proceedings filed on May 21, 1986, and summarily dismissed Peltier's petition on October 2, 1987.

2. The record before us demonstrates that the magistrate court findings and a probation officer's affidavit are the only two items the district court considered when it found that Peltier had violated the terms of his probation. The proba-

tion violation sentencing hearing transcript of March 16, 1983, contains the following dialogue concerning the March 9, 1983 probation violation hearing:

> THE COURT: A hearing was held last week on the probation violation and the Court found that you had violated your probation. That finding was based upon the findings and opinion of Magistrate Perry after a child protective hearing and based upon the affidavit of the probation officer, the contents of which

However, the remainder of the record before us contains other hearing transcripts, minute entries and memorandums sufficient to allow review of the issues presented.

On March 16, 1983, the district court found that Peltier had violated his probation and orally pronounced the following sentence:

> Therefore, the Court is of the opinion and does hereby pronounce sentence as follows:
>
> > You are committed to the custody of the Idaho State Board of Corrections for a maximum indeterminate period not to exceed 20 years. All but the first 11 months of that sentence is suspended, and the 11 months will be served in the Nez Perce County Jail.
> >
> > . . . .
> >
> > During the period of the suspended portion of the sentence you shall be on probation under the direction and control of the Idaho Board of Corrections through its Department of Parole and Probation.
> >
> > In the event that you shall violate any of the terms of that probation, then you shall be returned to court for the imposition of the remaining portion of the sentence.

Thereafter, in September, 1985, Peltier admitted to having made contact with his children while helping his former wife repair her automobile, and was found to have violated the terms of his probation and the twenty-year indeterminate sentence was imposed.

Peltier claims on appeal from summary dismissal of his post-conviction relief action that he is entitled to a hearing to determine whether his rights were violated at the March 9, 1983 probation violation evidentiary hearing because his attorney stipulated to the findings of the magistrate without his consent, and as a result he was not allowed to confront witnesses. Peltier also claims that he did not receive adequate notice concerning the March 9, 1983 evidentiary hearing and that he was denied an opportunity to be heard or present evidence at that hearing.

## II.

### STANDARD OF REVIEW

■ The Uniform Post Conviction Procedure Act as codified at I.C. § 19–4901 through § 19–4911 governs the procedure and manner in which a petition for post-conviction relief may be sought. The proper use of this Act is to avoid repetitious and successive applications, while protecting the applicant's constitutional rights. *Dionne v. State*, 93 Idaho 235, 459 P.2d 1017 (1969). An application for post-conviction relief is a special proceeding, civil in nature and is an entirely new proceeding, distinct from the criminal action which led to conviction. *Paradis v. State*, 110 Idaho 534, 716 P.2d 1306 (1986); *State v. Bearshield*, 104 Idaho 676, 662 P.2d 548 (1983). The Rules of Civil Procedure are applicable in such a proceeding. *State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983).

Idaho Code § 19–4906(c) is the statutory vehicle by which a summary disposition may be entered in a proceeding under the Act. This section provides that a summary disposition may be made only when there are no genuine issues of material fact, *State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983), and that if an issue of material fact exists, then an evidentiary hearing must be held. *Id.* at 472, 660 P.2d at 937.

■ In the event the district court decides to dismiss an application for a petition for post-conviction relief, I.C. § 19–4906(b) requires the court to notify the petitioner of its intention in order that petitioner have an opportunity to respond. Failure to notify the petitioner of the court's intent and offer petitioner an opportunity to respond

---

were stipulated as being what the probation officer would have testified to.

All these matters not being controverted are sufficient for a holding that the defendant has violated the terms of his probation. It now becomes the duty of the Court to make a

disposition of this case; that is, the Court must attempt to tailor some type of sentence that would protect society, protect children that you may come in contact with in the future, and offer a chance for you to rehabilitate yourself.

requires that a judgment denying application for a petition for post-conviction relief be reversed. *Cherniwchan v. State*, 99 Idaho 128, 578 P.2d 244 (1978).

■ When the district court dismisses a petition for post-conviction relief it need not issue formal written findings and conclusions, it need only find that there are no genuine issues of material fact and that judgment is appropriate as a matter of law. *State v. Christensen*, 102 Idaho 487, 632 P.2d 676 (1981).

## III.

## STATUS OF THE RECORD

In the initial order scheduling an evidentiary hearing on the petition for post-conviction relief, the district judge stated that he had listened to "the recordings of the hearings in question," and that as a result thereof, he was unable to conclude "whether the probation revocation hearing conformed with the requirements of due process as alleged by petitioner."

However, the record before this Court contains only the transcripts of sentencing hearings dated June 23, 1982 (original withheld judgment), March 16, 1983 (sentence imposing suspended twenty year term), and September 18, 1985 (sentence imposing twenty-year term).[3] The record contains numerous affidavits from appellant's family, acquaintances, the Nez Perce prosecuting attorney and the decision of Magistrate Judge Perry in the child custody proceeding. No minute entry or transcript of the March 9, 1983 probation violation evidentiary hearing to which the district court referred in the initial order scheduling a hearing on the post-conviction petition is contained in the record before this Court.

■ We have reviewed the entire record and conclude that appellant's application for post-conviction relief was improperly dismissed in a summary disposition manner because genuine issues of material fact existed and the district court did not give Peltier notice of its intent to summarily dismiss the petition. Idaho Code § 19–4906(c); *Cherniwchan v. State*, 99 Idaho 128, 578 P.2d 244 (1978).

### A. Probation Violation Evidentiary Hearing

Peltier alleges several errors occurring before and during the probation violation hearing. First, Peltier asserts that he did not at any time plead guilty to a violation of the terms of his probation at or before the probation violation hearing on March 9, 1983. Secondly, Peltier claims that his due process rights were violated because his attorney did not have authority to stipulate to the admission of certain evidence, and as a result he was not able to confront his accusers and was denied adequate notice of the alleged probation violations.

The district court in its memorandum decision dismissing the post-conviction petition states that appellant admitted violating his probation. However, a careful and thorough review of the record before us does not support this finding. The district court's memorandum states that several witnesses were called at the probation violation hearing on March 9, 1983, in defense of Peltier. Again, our review of the record does not support this finding.

Several affidavits allege that Peltier was not given a fair probation violation hearing on the ground that the district judge would not allow Peltier to speak on his own behalf or present further evidence.[4]

---

**3.** Appellant only requested the production of a transcript for these three hearings. No request has been made for a transcript of the probation violation evidentiary hearing held on March 9, 1983. However, it is clear from the record that the district court relied upon some part of this hearing in making its initial determination to schedule a hearing on the post-conviction relief petition.

**4.** The transcript of the March 16, 1983 hearing contains the following dialogue to which the

affiants may be referring in support of Peltier's claim that the district court would not allow him to speak or present additional evidence in his defense:

DEFENDANT: The only thing that I would like to say is that I've kept my word from the last time that I was before you and pled guilty on the first charge.
I have not broken probation, but at the same time I'm willing to accept what needs to be

The record before us is unclear whether Peltier was given an adequate opportunity to contest adverse evidence in the March 9, 1983 probation revocation hearing. In *State v. Edelblute*, 91 Idaho 469, 424 P.2d 739 (1967), this Court stated:

> It is imperative that the hearing process "afford the defendants full opportunity to present evidence in their behalf." Otherwise, the trial judge might not be sufficiently informed to fulfill the obligation that he "must exercise this judicial discretion [to grant or refuse a probation application] in a lawful and legal manner and grant or deny the same ... in the exercise of a sound, legal discretion." Further, the requirement that the court conduct a probation application proceeding "according to the established principles of law," [citation omitted] and, concomitantly, that an applicant for probation be granted "full opportunity to present evidence in his behalf," inherently demands that the applicant be specifically advised of all pertinent information received by the trial court so that the applicant has a opportunity to "explain and defend adverse matters otherwise the opportunity to present evidence would be meaningless."

*Id.* 91 Idaho at 477, 424 P.2d at 746–47 (citations omitted).

In the post-conviction relief action Peltier presents the affidavit of his son, Brandon, stating that Peltier never abused him in the manner in which the State alleged. Furthermore, the affidavits of several individuals argue that Brandon was very impressionable at the time of the custody proceedings and that the child told the investigators only what they wanted to hear concerning the allegations of sexual abuse.

Under these circumstances, and in light of the March 9, 1983 transcript not being contained in the record, we must construe all factual inferences in a summary disposition of a post-conviction relief action in favor of the petitioner. The state of the record before this Court strongly suggests that Peltier was not afforded a full opportunity to present evidence in his behalf at the March 9, 1983 probation violation hearing.

## B. Notice of Hearing

■ Peltier claims that his due process constitutional rights were violated because he was not given sufficient notice of the allegations in the probation violation hearing. The record is unclear as to the type of notice that was actually given to Peltier for the March 9, 1983 probation violation hearing. We note that an individual only needs to be given sufficient notice to reasonably inform him concerning the nature of the charges. The district court noted in its memorandum decision that Peltier received a summons concerning the probation violation hearing and that because of the nature of the Child Protective Act hearings previously conducted he was reasonably on notice concerning the basis of the probation violation charges. Our review of the record supports the trial court's finding that appellant had adequate notice concerning the nature and substance of the probation violation allegations.

## C. Notice of Intent to Summarily Dismiss Petition

Our review of the record, however, does not reveal that notice was provided to Peltier by the district court of its intention to summarily dismiss the petition for post-conviction relief. In the absence of notice being given to Peltier of the court's intention to summarily dismiss the petition, he had no opportunity to respond. Under these circumstances we reverse the order summarily dismissing Peltier's petition for post-conviction relief. *Cherniwchan v. State*, 99 Idaho 128, 578 P.2d 244 (1978); I.C. § 19-4906(c).

done in order to get this thing straightened out.
THE COURT: Well, Mr. Peltier, let's clear up one thing. You have broken probation. It's been proved that you broke the terms of your probation. You are going to have to recognize in your own mind that you have done that. You haven't admitted it, but you were by the proofs of the State; and I made my finding last week that portion was there, so don't talk about that anymore.

In the absence of a full record before us to support the district court's summary disposition, and in light of the district court's failure to give notice of summary dismissal of the post-conviction relief action, we remand the case for further proceedings, including an evidentiary hearing on the petition for post-conviction relief.

## IV.

### IMPOSITION OF SENTENCE

Peltier asserts that the district court erred when it increased his sentence from five years to twenty years. Peltier relies upon the language of the June 24, 1982 written judgment of the district court in support of his position. Peltier argues that although the written order was entitled an "Order Withholding Judgment and Order of Probation" it was in reality a conviction and a suspended five-year indeterminate sentence. However, our review of the transcript of the sentencing hearing and the oral statements of the district judge on March 23, 1983, clearly demonstrate that the district court's intention was to grant Peltier a withheld judgment.

In *State v. Phillips*, 99 Idaho 354, 581 P.2d 1173 (1978), this Court was confronted with a similar issue. In *Phillips* the written order subsequently filed with the clerk did not contain any reference to probation, however, the oral sentence pronounced by the trial court at the time of sentencing granted probation. In *Phillips* we held that the oral sentence imposed in court at the time of sentencing was ambiguous and was susceptible of two constructions, thus requiring resentencing. In *Phillips* the Court declined to rely upon the written

judgment in attempting to clarify an ambiguous oral sentence.

In the case presently before us the district court stated at the time of sentencing on June 23, 1983:

> So, the Court's going to *withhold judgment in this case for a period of five years.* During that period of time you are going to be under the direction and control of the Department of Parole and Probation. That means you will answer to a probation officer whenever you are told to and wherever you are told to.
>
> . . . .
>
> You will spend the next 60 days in the Nez Perce County Jail.
>
> . . . .
>
> All right. Now, *if you live by the rules for the term of the probation then you can have the case dismissed and you will never have been convicted.* On the other hand, if you disobey the rules you will be returned to court, and if the State proves you disobeyed the rules you will be sentenced; and *I want to point out to you that you can be sentenced to anything up to life in prison. The five-year withheld has nothing to do with your sentence.* (Emphasis added.)

■ This language clearly demonstrates the district court's intention to grant Peltier a withheld judgment and place him on probation. Furthermore, it clarifies any ambiguity or inconsistency that may exist in the written order.[5] In the instant case there is arguably some ambiguity in the text of the written judgment, but there is absolutely no ambiguity in the oral sentence pronounced by the district court. The district court clearly and unequivocally granted Peltier a withheld judgment and placed him on probation for a period of five

---

5. The Order Withholding Judgment and Order of Probation states:

> (2) That the probationer shall be under legal custody and control of the Idaho State Board of Correction through its Department of Probation and Parole *and the District Court,* and subject to the rules of probation as prescribed by the Board of Correction *and the District Court;* ... (Emphasis added.)

In this state the Idaho State Board of Correction through its Department of Probation and Parole, provides the staff to monitor and super-

vise a person on probation. The fact that the State Board of Correction has legal custody and control of defendant does not indicate that the district court has withdrawn its jurisdiction to modify the withheld sentence, it only means that the State Board of Correction is to monitor and supervise the defendant during his probationary term. The State Board of Correction has no authority to revoke probation while the defendant is on probation conditional to a withheld judgment.

years. Where the oral sentence clearly granted Peltier a withheld judgment, we decline to interpret the written judgment as being in conflict with the clearly expressed intent of the district court at the time sentence was pronounced.

■ Idaho Code § 19–2601(3) authorizes the district court to grant a withheld judgment, the purpose of which is to allow a defendant an opportunity to rehabilitate himself. The difference between suspending the imposition of sentence and withholding judgment is that under the former the defendant's judgment of conviction is entered, whereas in the latter case it is withheld. *State v. Pedraza*, 101 Idaho 440, 614 P.2d 980 (1980); *State v. Wagenius*, 99 Idaho 273, 581 P.2d 319 (1978). When a defendant receives a withheld judgment he is placed on probation to the Board of Correction. 101 Idaho at 442, 614 P.2d at 982; I.C. § 19–2601(5). However, after the court has granted a withheld judgment to a defendant and placed him on probation, jurisdiction is retained during the probationary period and the district court has continuing jurisdiction to modify its conditions. *State v. Oyler*, 92 Idaho 43, 436 P.2d 709 (1968); *Ex parte Medley*, 73 Idaho 474, 253 P.2d 794 (1953); *see also United States v. Locke*, 409 F.Supp. 600 (D.C.Idaho 1976), *aff'd* 542 F.2d 800 (1976). In *Pedraza* we interpreted I.C. § 19–2603 and § 20–222, to provide that when a withheld judgment is granted the trial court may revoke the probation and impose *any* sentence which originally might have been imposed at the time of conviction.[6] In *Pedraza* we stated:

> We are convinced that the portion of the statute which permits a court to "impose any sentence which originally might have been imposed at the time of conviction" refers only to a revocation of probation following a withheld judgment, while the portion which permits the original "sentence imposed to be executed" refers to a revocation of probation following a sus-

pension of the execution of judgment and sentence.

*Id.* 101 Idaho at 442, 614 P.2d at 982.

In the instant action it was determined that a probation violation had occurred following the grant of a withheld judgment to Peltier. The district court had the statutory jurisdiction and authority to impose upon Peltier *any* sentence which originally might have been imposed at the time of conviction, so long as it was within the statutory limits.

Peltier claims, however, that because the district court imposed a sixty-day county jail term that the withheld judgment was a disguised judgment of conviction. In *State v. Wagenius*, 99 Idaho 273, 581 P.2d 319 (1978), we considered this identical issue and stated:

> It is apparent from the broad language of § 19–2601 that the legislature intended the courts to have maximum flexibility to fashion the sentence most appropriate to the individual defendant. The statute therefore must be liberally construed. The ability to withhold a judgment and thereby spare the defendant, particularly a first time offender, the burden of a criminal record, and yet, to emphasize the seriousness of the defendant's action by conditioning that withheld judgment on a period of incarceration or payment of a fine is certainly one of the many sentencing alternatives the legislature intended to be available to the courts. Likewise, the payment of court costs and restitution are also proper and often very useful conditions of withheld judgments and probation.

*Id.* 99 Idaho at 279–80, 581 P.2d at 325–26; *see also Franklin v. State*, 87 Idaho 291, 392 P.2d 552 (1964) (McQuade, J., Taylor, J. and Knudsen, C.J. concurring and dissenting).

■ In this case the record unequivocally demonstrates that the district judge at the time of the original sentencing on June

---

**6.** Appellant cites *State v. Johnson*, 101 Idaho 581, 618 P.2d 759 (1980), for the proposition that the law concerning withheld and suspended sentences is unsettled in this state. However, *Johnson* is inapposite to the issues in this case.

In *Johnson* the district court retained jurisdiction for 120 days instead of granting a withheld judgment. In the case presently before this Court, it is clear that a withheld judgment was granted pursuant to I.C. § 19–2601.

23, 1982, imposed a sixty-day period of incarceration as a condition of probation and made it clear that if Peltier did not abide by the terms of the withheld judgment he could be brought before the district court and have a sentence of up to life imprisonment imposed for the crime of lewd and lascivious conduct. Peltier was on notice at the time of sentencing that a lengthy sentence was possible when he accepted the terms and conditions of the withheld judgment. If Peltier did in fact violate the terms of his probation, the actions of the district court in imposing the twenty-year sentence are in accord with the statutes and case law of this state. There is no double jeopardy issue present as argued by Peltier. His judgment of conviction was initially withheld and the district court did not impose any sentence other than probation and a short period of incarceration in the county jail as a condition of probation.

We affirm the district court's jurisdiction and authority to impose the twenty-year sentence, however, we reverse the summary disposition of the post-conviction relief petition and remand for an evidentiary hearing.

We therefore vacate the summary dismissal of the petition for post-conviction relief, and remand for further proceedings.

BAKES, C.J., and JOHNSON and McDEVITT, JJ. concur.

BISTLINE, Justice, concurring and dissenting.

With as much vigor and vehemence as these aging bones can muster, I dissent from the Court's conclusion to uphold the district court's *increase* of a sentence from five years to twenty years, which can only be attributable to judicial vindictiveness for defendant's technical violation of *one* condition of probation.

Two issues are before the Court. The least troublesome is whether the district court erred in summarily entering a summary judgment dismissing Peltier's petition for post-conviction relief. The state's brief raised little question that the district court erred in that regard, and at one of the oral arguments the deputy attorney general conceded that the district court should have conducted an evidentiary hearing. The prosecutor at proceedings in district court thought otherwise.[7] I concur with the majority's reversal of the summary disposition of the post-conviction relief petition.

The prosecutor also was of the opinion that Peltier was wrong in his assertion that the district court "actually imposed a maximum indeterminate sentence of FIVE years to the Idaho State Board of Corrections, and said sentence was suspended, and the petitioner was placed on probation under certain terms and conditions." R. 33. In the prosecutor's view, that issue was "one that must be resolved by *legal interpretation* ... but in regard thereto, petitioner's pleadings do not raise any genuine issue as to material fact." R. 33 (emphasis added). The prosecutor may have been correct in entertaining that view, leaving it to be determined, however, whether he was equally correct in his interpretation that sentence was *not* imposed on Peltier. R. 35.

Of interest, the instrument signed by the district court shows on its face that it was hand-crafted in and by the office of the prosecuting attorney of Nez Perce County;

---

**7.** After receiving Peltier's pro se petition, the district court conducted a conference call with Peltier and the Nez Perce County Prosecuting Attorney. In confirmation of the conference call the court wrote to Peltier and the prosecutor that "the Court will order a transcript of the proceedings in the previous hearings ... following receipt of which the parties could proceed with or renew pending motions." That letter was dated April 14, 1987. The transcripts were *not* furnished, and apparently were not ordered, the court evidently having experienced a substantial change of mind which was explained only by the court's assertion that, responsive to the prosecutor's motion to vacate, the file had been reexamined with the court *finding* "that its order granting petitioner a hearing ... was prematurely granted." R. 98. The prosecutor's motion for summary judgment was supported by the prosecutor's own affidavit which was largely conclusory in that "it is *obvious to affiant* that there is no genuine factual issue that has been raised...." Also advanced therein was the prosecutor's belief that the initial order upon the guilty plea was a withheld judgment.

the document does not provide any information as to what person in the prosecutor's office attended to the drawing of the document. In that same vein, the ten page order signed by the district court, captioned "Post–Conviction Relief Memorandum and Order," R. 98, summarily denying Peltier's petition for post-conviction relief, purportedly entered by the district court on its own motion to withdraw its earlier order of June 18, 1987, presents a strong indication that it was drawn by the office of the prosecutor and submitted to the court for signature. This indication is suggested by the letterhead and by language on page 1 of the order: "The court *adopts* the following as its Findings of Fact and Conclusions of Law and enters the following orders." R. 98. Unlike proceedings before the Industrial Commission where a referee submits proposed findings and the Commission *adopts* the same, a district court does *not* indulge in that procedure, but rather makes and issues the findings of fact and reaches and makes its own conclusions of law.

Be that as it may, and putting aside as of no real consequence who may have drawn the instrument signed by the district court, we note that Peltier's petitions brought to the attention of the prosecutor and the district court this Court's opinion in *State v. Pedraza*, 101 Idaho 440, 614 P.2d 980 (1980), which was issued ninety-eight weeks before the prosecutor authored and the district court signed the order of June 24, 1982, concerning which Peltier and the state of Idaho now argue as to the legal effect thereof. It is in order to turn to *Pedraza*, which was authored by Justice Bakes, and lacked but one vote of being a unanimous opinion. Justice Shepard dissented solely on his philosophical view deeming that the legislature in its enactment of I.C. § 20–222 was only enlarging the authority previously granted by I.C. § 19–2603. Justice Bakes, however, commanded a four-to-one majority view in the very well-reasoned opinion which he authored and wherein he nicely reconciled the two statutes. At the outset the opinion for the Court stated the issue and the holding:

> We are asked to decide *whether a trial court may increase a previously imposed but suspended sentence upon a finding that the defendant violated the conditions of his probation.* We conclude that the statutory sentencing scheme precludes a district court from imposing a greater sentence in such circumstances.

*Pedraza*, 101 Idaho at 441, 614 P.2d at 981 (emphasis added). The opinion noted the sentencing alternatives available:

> When a criminal defendant is adjudged guilty of the crime charged, a district court judge may choose from several sentencing alternatives found in I.C. § 19–2601. The court may, among other things, suspend the execution of judgment, I.C. § 19–2601(2), or withhold judgment, I.C. § 19–2601(3). In either case, the defendant is placed on probation. If the crime involved is a felony, the probation 'shall be to the board of correction.' I.C. § 19–2601(5).

*Pedraza*, 101 Idaho at 442, 614 P.2d at 982. Justice Bakes delineated the apparent conflicting provisions of the two statutes applicable to a probationer who, based on allegations of his having violated the terms thereof, is brought before the Court:

> Both parties agree that this case depends on the construction and application of two statutes, I.C. §§ 19–2603 and 20–222. Both statutes discuss the sentencing court's alternatives should it determine that the defendant has violated the conditions of his probation. I.C. § 19–2603 indicates that the court may 'if judgment has been withheld, pronounce any judgment which it could originally have pronounced, or, if judgment was originally pronounced but suspended, the original judgment shall be in full force and effect and may be executed according to law....' That statute, when applied to this case, would appear to restrict the sentencing court to the sentence originally imposed.
>
> However, according to I.C. § 20–222, a sentencing court which has found the defendant to be in violation of his probation 'may revoke the probation and suspension of sentence and cause the sen-

tence imposed to be executed, or may cause the defendant to be brought before it and may continue or revoke the probation, or may impose any sentence which originally might have been imposed at the time of conviction.' *The state contends that the above language empowers a sentencing court to increase the sentence originally imposed* but suspended, upon a finding of violation of probation. We think that fundamental rules of statutory construction and the statutory sentencing scheme itself require a contrary conclusion.

*Pedraza,* 101 Idaho at 441–42, 614 P.2d at 981–82 (emphasis added). That "contrary conclusion" was not a bare assertion, but was predicated upon the exact language of the two statutes. Idaho Code § 19–2603 and Idaho Code § 20–222 both make provision, as Justice Bakes pointed out, for the sentencing court's procedure where a defendant is found to have violated the terms of his probation. Idaho Code § 19–2603 governs the circumstance where the court's judgment had not been pronounced but had been withheld and the defendant was awarded probation, which he thereafter violated: the court may "pronounce any [legal] judgment which it could have originally pronounced, or, if judgment was originally pronounced but suspended, the original judgment shall be in full force and effect *and may be executed* according to law." (Emphasis added.) It is to be noted from the very language of I.C. § 19–2603, that implicit therein is that, as to judgment pronounced but suspended, the suspension, if the statute were better worded, *is as to the execution of the judgment.* If a judgment is pronounced, *i.e.,* the adjudication of conviction of a felony *and* the punishment imposed, such will remain in a state of repose (suspension) until the defendant is found to have either completed a successful probation and is discharged, or has violated the terms of his probation. On established violation of probation, the execution of the judgment which imposed punishment will

self-activate, and the district court will enter an order so providing.

The provisions of I.C. § 20–222 were noted in *Pedraza* to have application similar to I.C. § 19–2603. Idaho Code § 20–222 appears to contemplate the situation where upon the granting of probation, the court may or may not have imposed a sentence as part and parcel of a judgment which may include conviction of a felony and imposition of a sentence. Because of irreconcilable conflict between the two statutes, Justice Bakes in authoring the *Pedraza* opinion held that permitting the original sentence to be executed refers to a revocation of probation where the district court had suspended *both* the execution of the judgment of conviction *and* the sentence imposed therein.

The State and Peltier are unable to agree on whether the district court, the Hon. John Maynard, upon Peltier's plea of guilty, imposed a sentence.[8] There is no doubting that there was a sentencing hearing which *might* have resulted in the imposition of a sentence and in that proceeding the court was inclined to suspend execution thereof in order to ascertain how Peltier fared as a probationer. While one cannot divine that the court was of such a mind, such import is gathered by a close reading of the transcript of the proceedings on June 23, 1982, at which the prosecutor, Mr. Tobiason, was present, as was also Peltier and his attorney, Mr. Steiner:

> MR. TOBIASON: The next matter on the Court's calendar is *state of Idaho versus Edward L. Peltier,* case number 49049. *This is the time set for sentencing in this matter.* Mr. Peltier is represented by Del Steiner in this matter.

> THE COURT: *You previously entered a plea of guilty* to a charge of lewd conduct with a minor, and the Court ordered a presentence investigation conducted. The investigation was completed and a report made. Have you seen a copy of the report?

> THE DEFENDANT: Yes, your Honor.

---

8. A conviction takes place when a jury returns a verdict of guilty, or on the defendant entering his plea of guilty.

THE COURT: All right. This is the time for you to correct or dispute or otherwise comment on the contents of the report.

THE DEFENDANT: No corrections, your Honor.

THE COURT: All right. *Is there anything you want to add to the report that you think might affect the sentence* or have—Mr. Steiner?

MR. STEINER: Your Honor, I would make a brief statement for Mr. Peltier in regard to a couple of points in the presentence investigation.

. . . .

[THE COURT] After studying—and the presentence is very thorough and very long and very complete, it appears to me—but after studying and considering all of that information and the comments that have been made here, it would appear to me that the proper way to handle this case is by virtue of a probation, and if that doesn't work we'll know it rather quickly; and if you can't live by the rules and straighten this thing out, why, we can take other and more firm action, and that would be the second alternative, and that's isolate you from other people.

So, the Court's going *to withhold judgment in this case for a period of five years. During that period of time you are going to be under the direction and control of the Department of Parole and Probation.* That means you will answer to a probation officer whenever you are told to and wherever you are told to.[9]

You'll file a report in writing with the probation officer every month. They'll give you the forms to make that report on. You'll have the report, supplying all the information, in your probation officer's hands no later than the last day of each and every month.

You'll at all times conduct yourself as a good citizen. That means you are going to obey all laws.

Now, I understand the children are out of the home or you do not have access to them, and that must remain. You must stay away from these and other small children. You must continue that.

You must continue with mental health counseling for so long as the counsel [sic, counselor] determines that it's helpful. He will make the election of when to terminate that counseling, not you.

You'll get some kind of steady employment. Keep yourself busy, very active. You will not change your place of residence without getting the permission of your probation officer. You will not change what you are doing, that is, going to school, employment, that type of thing, without getting the permission of your probation officer in writing. You will not leave the state without getting the permission of your probation officer in writing.

You will spend the next 60 days in the Nez Perce County Jail. Now, Mr. Steiner has asked for a 24 hour delay, and I reject that request. *You will start right as of now.*

Now, whether or not you can go to school, well, that's entirely up to the sheriff and Mr. Egbert. I don't feel that that's within my authority to interfere with that, but you can talk to them about that and I don't have any objection. That's their department. They know more about those things than I do.

All right. Now, you don't have to accept this probation if you don't want to, and if you refuse to accept it then the Court must pronounce sentence. Will you accept probation?

9. A commitment to the State Board of Corrections for a definite term *is a sentence,* as discussed *infra.* It was an obvious inconsistency, likely an inadvertent choice of words, for the court to acknowledge that Peltier had pleaded guilty, to place him under the Board of Corrections, and then add that the court was withholding judgment. The only acceptable explanation is that the court, in stating that it was "going to withhold judgment ... for a period of five years," intended to state that it was *execution* of judgment which was being withheld. One who has been around the courts as long as I have sees many occasions where withholding judgment is confusingly used interchangeably with "withholding imposition of judgment" and with withholding execution of judgment.

THE DEFENDANT: Yes, your Honor.

THE COURT: Each and every one of these rules?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Now, if you live by the rules for the term of probation *then you can have the case dismissed and you will never have been convicted.*[10]

On the other hand, if you disobey the rules you will be returned to court, and if the State proves you disobeyed the rules you will be sentenced; and I want to point out to you that you can be sentenced to anything up to life in prison. The five-year withheld has nothing to do with your sentence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Now, after you know that will you still accept probation?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Then you contact Mr. Hathaway—or they'll be in contact with you upstairs before you get out of jail and go over the rules, so when you are released, why, you'll know what to expect. You can have a seat in the jury box.

(WHEREUPON THE HEARING WAS CONCLUDED)

Tr., 3–6 (emphasis supplied).

It is abundantly clear that Peltier was committed to the supervised custody of the Idaho Board of Corrections for five years, but was jailed for sixty days, which smacks of punishment. There is nothing in the record to show that those brief proceedings were transcribed and that Peltier was furnished with a copy of the transcript while he served out the sixty days or thereafter while he was in the process of serving the five year supervised probation.

Following the hearing above set out in detail, Judge Maynard, the district court judge, signed a written instrument which he believed embodied that which had taken place at the sentencing proceeding over which he had presided on June 23, 1982:

ORDER WITHHOLDING JUDGMENT AND ORDER OF PROBATION

WHEREAS on June 23, 1982, the above-named defendant was brought before the undersigned Judge of the above-entitled Court for sentencing after having been previously charged with the crime of LEWD CONDUCT WITH A MINOR UNDER SIXTEEN, I.C. 18–6607, a Felony, and arraigned thereon; and,

WHEREAS, *through due process of law, the said defendant previously plead guilty to said crime and requests probation from the said District Court;* and,

WHEREAS, the said District Court having received and reviewed defendant's presentence investigative report, and ascertained the desirability of granting the petition of probation,

NOW, THEREFORE,

IT IS HEREBY *ORDERED that the* said *defendant be committed to the custody of the Idaho State Board of Correction* for the maximum indeterminate period of *not to exceed FIVE (5) years,*[11] and that [execution of] judgment be withheld and defendant be placed on probation for the period of FIVE (5) years under the following conditions,[12] to-wit:

1. That the probation is granted to and accepted by the probationer, and with the understanding that the Court may at any time, in case of the violation

---

**10.** Again, the court was lacking in specificity in terminology. Peltier had been convicted by the recorded entry of his plea of guilty. What he had to have had in mind was that no formal judgment of conviction of the crime charged would be entered and made of record. Thus Peltier would have been freed of the stigmatism which attaches to a felony conviction.

**11.** The bracketed words are inserted for the reader's benefit. The court's order was necessarily the court's judgment, *i.e.,* the course of

action which the court had decided to take. Peltier was committed to the custody of the Board of Corrections, but execution of that judgment was simultaneously suspended. *See* I.C. § 19–2601(3).

**12.** When the Court spoke orally in terms of the custodian being the Department of Parole and Probation, it obviously meant the Idaho State Board of Correction. See Probation Condition No. 2. The written judgment on this point squares with the court's oral pronouncement.

of the terms of the probation, cause the probationer to be returned to the Court for the imposition of sentence as prescribed by law; or any other punishment as the Court may see fit to hand down;

2. That the probationer shall be under the legal custody and control of the Idaho State Board of Correction through its Department of Probation and Parole and the District Court, and subject to the rules of probation as prescribed by the Board of Correction and the District Court; and,

3. That the probationer, if placed on probation to a destination outside the State of Idaho, or leaves the confines of the State of Idaho with or without permission of the Director of Probation and Parole does hereby waive extradition to the State of Idaho, and also agrees that the said probationer will not contest any effort by any state to return the probationer to the State of Idaho; and

4. That the probationer shall meet with defendant's probation officer promptly at the time and place appointed by defendant's probation officer; and

5. That defendant shall make complete and honest written monthly reports to defendant's probation officer on or before the last day of each and every month during defendant's probation upon forms provided by the probation officer; and,

6. That defendant shall conduct defendant as a good citizen and obey all city, county, state, and federal laws; and,

7. That defendant shall not leave the State of Idaho without the prior written permission of defendant's probation officer; and,

8. That defendant shall not have contact with defendant's stepchildren or other small children; and,

9. That defendant continue mental health counseling; and,

10. That defendant shall be steadily employed and shall not change defendant's employment without prior written permission of defendant's probation officer; and,

11. That defendant shall not change defendant's residence without the prior written permission of defendant's probation officer; and,

12. *That defendant serve sixty (60) days in the Nez Perce County Jail commencing June 23, 1982;* and,

13. That defendant shall not change defendant's school without the prior written permission of defendant's probation officer; and

14. That defendant shall obey each and every other provision which defendant's Agreement of Probation sets forth.

IT IS FURTHER ORDERED That upon the expiration of the period of suspension of judgment herein fixed, or the earlier termination thereof, and upon written showing by or on behalf of the defendant that defendant has fully complied with the terms of defendant's probation, then and in that event, this action shall be dismissed.

/s/ John H. Maynard
District Judge

(Emphasis added).

Peltier contends that his commitment to the State Board of Corrections was the sentence which was imposed, and only the entry of judgment of conviction was withheld, and therefore the court could not thereafter resentence him to an *increased* term in light of the fact that the sentence was put into execution. He also contends that sixty days of incarceration was punishment imposed and inflicted along with his being condemned to serve five years as a closely supervised probationer. The law appears to be with Peltier.

## INCARCERATION IS INCARCERATION

Peltier's pro se brief filed in the district court in support of his motion for partial summary judgment in the post-conviction relief proceedings, which is found attached to his counsel's brief filed in this Court, presented for the attention and benefit of the district court compelling case precedent. The authority cited is applicable to

the issues before us, and it may very well be controlling, although none of it was given consideration when the district court summarily granted the state's motion for entry of summary judgment. Peltier cited to the case of *Fain v. Duff*, 488 F.2d 218 (5th Cir.1973). The Court of Appeals provided a concise statement of the facts:

Although this case involves complicated constitutional and statutory questions, the facts are simple and undisputed. On November 12, 1970, Roger Fain, then aged sixteen years and nine months, was arrested by Ormond Beach police officers for the alleged rape the day before of Mary Frances Oswald in Volusia County, Florida. Five days later, a counselor of the juvenile court system filed a petition in juvenile court alleging that Fain was a delinquent child by reason of having assaulted and raped Mrs. Oswald. On November 23, 1970, a hearing was held in the Volusia County Juvenile Court, during which an assistant state attorney appeared and urged the judge to waive jurisdiction and certify the case to the circuit court. After hearing argument on this question, the judge declined to waive jurisdiction, found Fain delinquent and committed him to the Division of Youth Services for an indeterminate period not to extend beyond his 21st birthday. Since November 23, 1970, Fain has remained in the custody of the Division of Youth Services at the Dozier School for Boys.

On December 1, 1970, the state attorney for the Seventh Judicial Circuit urged the juvenile court judge to stay the issuance or execution of its order of commitment; the judge did not do so. The next day, an indictment was returned alleging the same acts on which the delinquency adjudication was based. Two weeks later, on December 17, 1970, the state attorney urged the juvenile court to relinquish jurisdiction.

In the circuit court, Circuit Judge Melton of the Seventh Judicial Circuit dismissed the indictment against Fain on January 7, 1971, on the grounds of former jeopardy. The state appealed to the First District Court of Appeal, which reversed Judge Melton's ruling on August 17, 1971. *State v. R.E.F.*, 251 So.2d 672 (Fla.App.1971). The Supreme Court of Florida affirmed the court of appeal, but stayed its mandate to allow Fain to pursue any remedies he might have in federal court. *R.E.F. v. State*, 265 So.2d 701 (Fla.1972). Fain filed a petition for a writ of habeas corpus in the Middle District of Florida, and a hearing was held before the U.S. District Court on November 21, 1972. On January 15, 1973, the district court issued the writ requested by Fain. The state filed a notice of appeal February 7, 1973.

Three questions confront us in this appeal:

. . . .

2. Was the district court correct in determining that the actions of the State of Florida violate the former jeopardy clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment.

. . . .

In this case, the courts of Florida have had an opportunity to promulgate a final, definitive ruling on the question involved. The Florida Supreme Court has authoritatively stated in the context of this case that in its opinion reprosecution of the petitioner will not violate his right not to be twice placed in jeopardy. 265 So.2d 701. There is nothing more for the courts of Florida to say on this issue.

. . . .

Fain is not asserting merely a federal defense to a state prosecution. He is asserting a constitutional right not to be twice put in jeopardy for the same offense. Although double jeopardy (if shown) would certainly be a proper defense to assert at trial and in post-conviction proceedings, the right consists of more than having the second conviction set aside. It consists of being protected from having to undergo the rigors and dangers of a second—illegal—trial. Double jeopardy is not a mere defense to a criminal charge; it is a right to be free from a second *prosecution*, not merely a second *punishment* for the same offense

(though that is obviously included in the right.) The prohibition of the double Jeopard Clause is 'not against being twice punished, but against being twice put in jeopardy.' *United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192 [1194], 41 L.Ed. 300 (1896); *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 169, 21 L.Ed. 872 (1874); *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221 [223], 2 L.Ed.2d 199 (1957).

. . . .

We now turn to the question of whether prosecuting Fain for rape violates his rights under the Constitution. Fain argues that he was not only placed in jeopardy in the juvenile court—he was convicted and punished. His is a plea of *autrefois convict*. To try him again would not only subject him to the harassment of an additional judicial proceeding, but also subject him to the risk of being twice punished for the same offense. Therefore, reprosecution of him as an adult violates both conceptions of fundamental fairness and the Constitution's protection against double jeopardy, made applicable in the state proceedings by the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The State of Florida contends (1) since the juvenile proceedings were not criminal in nature, Fain was never put in jeopardy; (2) even if the juvenile proceedings are held to have placed Fain in jeopardy, as a juvenile, he has no right not to be placed in jeopardy again; and (3) the correct standard to apply is fundamental fairness, and it is not fundamentally unfair to prosecute Fain as an adult for the rape.

A. Was Fain placed in jeopardy in the juvenile court proceedings?

It cannot be disputed that a juvenile court judge in Florida may, by finding a juvenile to be delinquent, impose significant restrictions on his liberty. He may 'Place a child . . . under the supervision of an authorized agent of the division of youth services . . . Commit the child to a . . . child-caring institution . . . Commit the child to the division of youth services. . . .' F.S.A. § 39.11. Although com-

mitment to the Division of Youth Services may result in the juvenile being allowed to return to his home, it *may also result in incarceration until age 21*. Fain's commitment to the division resulted from his having been found delinquent. And his being found delinquent resulted from his having violated a criminal law of the State of Florida. F.S.A. § 39.01(9). Thus, *a violation of the criminal law may directly result in incarceration*. This is a classic example of 'jeopardy.'

The state's argument that the purpose of the commitment is rehabilitative and not punitive does not change its nature. No authority need be cited for the proposition that *a court should look past the labels to the substance* of an action. *Regardless of the purposes for which the incarceration is imposed, the fact remains that it is incarceration*. The rehabilitative goals of the system are admirable, but they do not change the drastic nature of the action taken. *Incarceration of adults is also intended to produce rehabilitation. A court proceeding which may result in incarceration places a person, adult or juvenile, in jeopardy*. [Citations omitted.]

. . . .

Fain's mere status as a juvenile, although it may subject him to the jurisdiction of an entirely different court system, cannot deprive him of rights that adults enjoy in the criminal justice system. If Florida wants to punish Fain as an adult, it must give him all the rights of an adult. We need not deal at all with Fain's rights in the juvenile court system, for now he is in the adult court system. And in that system, the Constitution's command that no person shall be twice placed in jeopardy for the same offense unquestionably applies.

. . . .

In this case it is especially clear that Fain is being prosecuted for 'the same offense,' because he was adjudged delinquent by reason of having violated the same criminal law for which he is now being indicted. This is even a clearer

case than *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), in which the Court held that for a State and a municipality to both prosecute someone for committing the same acts violates the double jeopardy clause. Here, we have not only the same sovereign, we have in addition exactly the same acts being punished and exactly the same elements in each offense. Thus, Fain is now being prosecuted for the 'same offense' for which he was adjudged delinquent in the juvenile proceedings.

. . . .

The foregoing discussion demonstrates that *Fain was placed in jeopardy in the juvenile court proceedings, and that he is now placed in jeopardy again in the Circuit Court* for the Seventh Judicial Circuit for the same offense. The Constitution does not permit such an action to occur.

*Fain,* 488 F.2d at 221–26 (emphasis added).

Standing alone, the *Fain* decision is impressive and persuasive. It becomes more so when one observes that of the circuit court's fifteen judges, all fifteen participated when the state of Florida sought an *en banc* rehearing. Of the fifteen judges, eleven by denying the petition voiced their approval of the opinion as written.

Appreciation for the quality of the *Fain* opinion becomes further enhanced when one notes that the Supreme Court of the United States quoted from it approvingly in the landmark case of *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Chief Justice Burger, in authoring the *Breed* opinion for a *unanimous* court, noted that seventeen-year-old Breed's actions, while allegedly armed with a deadly weapon, if committed by an adult would constitute the crime of robbery. Following a detention hearing he was detained to await a hearing on the petition. At the hearing the Juvenile Court found the allegations proven, and the youth was further detained to await a dispositional hearing. After two hearings the court declared the youth unfit for treatment as a juvenile and ordered that he be prosecuted as an adult. None of the higher California courts afforded any relief on habeas corpus petitions. After a preliminary hearing the youth was ordered held for trial in Superior Court, was informed against, and entered pleas of not guilty. The case was submitted to the court on a stipulation of facts. The court found the youth guilty and committed him to the state's Youth Authority.

At this point his mother, as guardian ad litem, sought relief by applying to the appropriate United States District Court, claiming that the youth had been placed in double jeopardy. The case wound its way through the Ninth Circuit Court of Appeals and eventually found a final resolution of the double jeopardy issue in the Supreme Court.[13] The Supreme Court's unanimous

---

**13.** The United States Supreme Court's holding may be synopsized by these excerpts:

We cannot agree with petitioner [state] that the trial of respondent in Superior Court on an information charging the same offense as that for which he had been tried in Juvenile Court violated none of the policies of the Double Jeopardy Clause. For, even accepting petitioner's premise that respondent 'never faced the risk of more than one punishment,' we have pointed out that 'the Double Jeopardy Clause ... is written in terms of potential or risk of *trial* and conviction, not punishment.' *Price v. Georgia,* 398 U.S. [323] at 329, 90 S.Ct. [1757] at 1761 [26 L.Ed.2d 300 (1970)]. (Emphasis added.)

. . . .

Respondent was subjected to the burden of two trials for the same offense; he was twice put *to the task of marshaling his resources* against those of the State, twice subjected to

the 'heavy personal strain' which such an experience represents. *United States v. Jorn,* 400 U.S. [470] at 479, 91 S.Ct. [547] at 554 [27 L.Ed.2d 543 (1971)].

. . . .

The possibility of transfer from juvenile court to a court of general criminal jurisdiction is a matter of great significance to the juvenile. *See Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

. . . .

We do not agree with petitioner [state] that giving respondent the constitutional protection against multiple trials in this context will diminish flexibility and informality to the extent that those qualities relate uniquely to the goals of the juvenile-court system. We agree that such a holding will require, in most cases, that the transfer decision be made prior to an adjudicatory hearing.

. . . .

opinion dealt exhaustively with the pros and cons which had been advanced by the parties. In doing so it stated, *inter alia,* that: " 'commitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil." ' " *Breed,* 421 U.S. at 530, 95 S.Ct. at 1786 (quoting *In re Gault,* 387 U.S. 1, 50, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967)).

It was at this point that the *Breed* court, by footnote 12, embraced the language of *Fain v. Duff:*

> Nor does the fact 'that the purpose of the commitment is rehabilitative and not punitive ... change its nature.... *Regardless of the purposes for which the incarceration is imposed, the fact remains that it is incarceration.* The rehabilitative goals of the system are admirable, but they do not change the drastic nature of the action taken. Incarceration of adults is also intended to produce rehabilitation.'

*Breed,* 421 U.S. at 530, 95 S.Ct. at 1786 (emphasis added).

In his brief furnished to the district court, Peltier, in presenting his double jeopardy argument and citing *Breed v. Jones,* also included *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874); *United States v. Best,* 571 F.2d 484 (9th Cir.1978); *U.S. v. Bynoe,* 562 F.2d 126 (1st Cir.1977); *U.S. v. Teresi,* 484 F.2d 894 (7th Cir.1973); *Oksanen v. United States,* 362 F.2d 74 (8th

Cir.1966); and *U.S. v. Rosenstreich,* 204 F.2d 321 (2d Cir.1953). The *Lange* case, although it is now quite old, has stood the test of time, and was considerably relied upon in *United States v. Benz,* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), as to the issue of increasing a sentence. There the following question was certified from a circuit court to the Supreme Court:

> After a District Court of the United States has imposed a sentence of imprisonment upon a defendant in a criminal case, and after he has served a part of the sentence, has that court, during the term in which it was imposed, power to amend the sentence by *shortening* the term of imprisonment?

*Benz,* 282 U.S. at 306, 51 S.Ct. at 113 (emphasis added). The Supreme Court answered in the affirmative:

> The general rule is that judgments, decrees and orders are within the control of the court during the term at which they were made. They are then deemed to be "in the breast of the court" making them, and subject to be amended, modified, or vacated by that court. *Goddard v. Ordway,* 101 U.S. 745, 752, 25 L.Ed. 1040 [1879]. The rule is not confined to civil cases, but applies in criminal cases as well, *provided the punishment be not augmented. In re Lange,* 85 U.S. (18 Wall.) 163, 167–174, 21 L.Ed. 872; *Basset*

---

> We hold that the prosecution of a respondent in Superior Court, after an adjudicatory proceeding in Juvenile Court, violated the Double Jeopardy Clause of the Fifth Amendment, as applied to the States through the Fourteenth Amendment.

*Breed v. Jones,* 421 U.S. at 532–41, 95 S.Ct. at 1787–91 (1975). The Ninth Circuit Court panel also had held that California's prosecution of *Breed* was in violation of the prohibition against subjecting a person to double jeopardy, twice citing to *Fain v. Duff, supra.* The opinion for the panel was authored by Judge Wallace, whose language is reminiscent of the Thomas Jefferson style:

> There are basic issues of fairness upon which we should comment. Nowhere in our criminal system do we allow the prosecution to review in advance the accused's defense and, as here, hear him testify about the crime charged. *The most heinous and despicable criminal is saved from such an invasion of his fundamental rights.* Yet, if we adopt Califor-

nia's position, we approve having such a procedure applied to those of tender years. This offends our concepts of basic, even-handed fairness.

> We hold that once jeopardy attaches at the adjudicatory or jurisdictional hearing in the juvenile court (here held pursuant to Cal. Welf. & Inst'ns Code § 602), the minor may not be retried as an adult or a juvenile absent some exception to the double jeopardy prohibition. There was none here. *We cannot allow this fundamental constitutional right to be wrenched from the minor under the guise of providing a system for his protection.*

> We reverse with directions for the district court to issue a writ of habeas corpus directing the state court, within 60 days, to vacate the adult conviction of Jones and either set him free or remand him to the juvenile court for disposition.

*Jones v. Breed,* 497 F.2d 1160, 1168 (9th Cir. 1974).

*v. United States,* 9 Wall. 38, 19 L.Ed. 548. In the present case the power of the court was exercised to mitigate the punishment, not to increase it, and is thus brought within the limitation.

*Benz,* 282 U.S. at 306–07, 51 S.Ct. at 114 (emphasis added). The court then explained the constitutional prohibition against *increasing* a sentence during the same term using the language from *Ex parte Lange, supra:*

> For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted?
>
> The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.

*Benz,* 282 U.S. at 308, 51 S.Ct. at 114 (quoting *Lange,* 85 U.S. (18 Wall.) at 173, 21 L.Ed. at 878). The *Benz* court then noted that in the *Lange* case the court had gone on to say that, during the term, a judgment imposing a sentence of two years imprisonment could be vacated and a *lesser* sentence imposed, either one year's imprisonment, or a $200 fine, the latter only in the event that no time had been served on the first sentence. Obviously a reduction in sentence being served is not two punish-

ments for the same offense, but that time served *plus* a fine would be in violation.

The power of a federal court to *lower* a sentence during the term in which the sentence has been imposed is seen as firmly established. But there has always and only been a power to lower. So in *Benz,* note was approvingly taken of the construction put on *Lange* by a United States District Court for the Eastern District of Wisconsin, where a defendant's sentence had been *reduced* during the term from 2 years to 1½ years:

> In *Ex parte Lange,* supra, the doctrine so stated is distinctly recognized, but the case is distinguished as one where the statute authorized imprisonment, or fine, in the alternative only, and the sentence imposed both; and the majority opinion merely holds that new sentence of imprisonment alone cannot be imposed after payment of the fine, which operated as a satisfaction of the prior judgment.

*Benz,* 282 U.S. at 310, 51 S.Ct. at 115 (quoting *In re Graves,* 117 F. 798, 799 (E.D.Wis.1902)).

Thus it is seen that in the federal system there is no notion whatever that a sentence once imposed can be increased. Any doubt, and there should be none on a close reading of *Lange,* is laid to rest by *Roberts v. United States,* 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943). While it is true that our case today is not in the federal system, we take it to be the law that the fifth amendment to the Constitution of the United States is applicable to the state courts via the fourteenth amendment.

As is often the case, entry of judgment of conviction in a criminal case is in Idaho much the same under our I.C. § 19–2519 as it is under California's Penal Code § 1207. In *People v. Banks,* 53 Cal.2d 370, 1 Cal. Rptr. 669, 348 P.2d 102 (1959), that court made it abundantly clear that the entry of conviction of a felony together with imposition of sentence of imprisonment is *in and of itself punishment* even though the incarceration is withheld while the defendant serves out his probation time:

> [T]he defendant acquires the legal status of a person who has been both *con-*

*victed* of a felony *and sentenced* to such imprisonment. During the maximum period of such term the defendant so sentenced may be retained in the constructive custody of the court or may at any time, in the discretion of the court, be commuted to custody of the prison authority. *The term of imprisonment in either case is that to which he was sentenced....*

It is, of course, express statutory law that 'When judgment upon a conviction is rendered, the clerk, or if there is no clerk, the judge, must enter the same in the minutes, stating briefly the offense for which the conviction was had, and the fact of a prior conviction, if any. A copy of the judgment of conviction shall be filed with the papers in the case.' (Pen. Code, § 1207.) Upon entry of such judgment and withholding of commitment the sentenced defendant is held in the custody, actual or constructive, of the court and is entitled to only such privileges as the court may affirmatively prescribe in its order. Mere stay of execution of an entered judgment manifestly does not entitle the defendant to his freedom or otherwise relieve him of the disabilities resulting from conviction and imposition of judgment of imprisonment in a state prison. So completely are his rights suspended and his status established that, in the event of any violation of the terms of probation, the court at any time during the probationary term may forthwith require his arrest and commit him to the prison authority.

*Banks*, 1 Cal.Rptr. at 679, 348 P.2d at 112 (emphasis added) (note omitted).

As to whether suffering entry of judgment of felony conviction and imposition of sentence of imprisonment amounts to punishment, one need only consider that in *People v. Banks* such was defendant's status when he was apprehended in possession of a firearm, contrary to a statute forbidding such possession by "one previously convicted of a felony."

In *People v. McAllister*, 15 Cal.2d 519, 102 P.2d 1072 (1940), the California Supreme Court, quoting the federal rule as to alteration or amendment of criminal judgments *during the term* (coming down *via Bronson v. Schulten*, 104 U.S. 410, 415, 26 L.Ed. 797, 799 (1881)), observed that California had abolished terms of court, and with due regard for its statutes, from which Idaho's are taken, declared the rule as follows:

> If the sentence has been entered in the minutes of the court, or if the defendant has begun serving said sentence *or has been restrained by the sentence imposed* then the court is without jurisdiction to vacate, add to, or in any manner modify the sentence originally pronounced. On the other hand, if the sentence pronounced has not been entered by the clerk in his minutes, and no legal restraint has been imposed upon the defendant by reason of said sentence, then it is proper for the court to change the sentence originally pronounced.

*McAllister*, 102 P.2d at 1075 (emphasis in original).

The *McAllister* rule was reaffirmed in *Ex parte Pedrini*, 33 Cal.2d 876, 206 P.2d 699, 702 (1949), with the observation that there were then in that state two statutory exceptions, of no pertinence here. Similarly, of course, we have in Idaho statutory provisions for 120 day retained jurisdiction, and Idaho Criminal Rule 35—which specifically allows for *reduction* of a sentence.

More recently, Chief Justice Traynor, also writing for a unanimous court, as was so in the two aforementioned cases, cited *Pedrini* for the proposition that the superior court having imposed sentence on May 23rd, was on July 13th "without power to thus 'correct' its sentence *as pronounced and formally entered in the minutes.*" *In re Wimbs*, 65 Cal.2d 490, 55 Cal.Rptr. 222, 421 P.2d 70, 75 (1966) (emphasis added). Even more recently a California court of appeals reaffirmed the holdings of *People v. Banks, supra,* and *In re Wimbs, supra,* citing the latter for the proposition *"that upon the imposition of sentence as pronounced and its formal entry in the minutes, the trial court is without power to revise its deliberately exercised judicial discretion."* *Boles v. Superior Court,* 37

Cal.App.3d 479, 112 Cal.Rptr. 286, 289 (1974) (emphasis in original).

Turning to the other above-mentioned cases which Peltier's brief brought to the attention of the district court, it is noted that all are directly on point on the issue of a court's authority to *increase* the severity of a sentence previously imposed and put into execution, a sentence fashioned after violation of probation. Moreover, it is seen that a sentence to probation is *punishment* and is every bit as much an imposed sentence as is a sentence to pay a monetary fine, or a sentence which includes the imposition of a term of incarceration. In *United States v. Teresi*, 484 F.2d 894 (7th Cir. 1973), the sentencing judge, whose imposition of a three year term had been affirmed, died, and Teresi moved the court for a reduction in sentence. The criminal offense involved was refusal to be inducted, which ceremony Teresi disdained, with the result that *instead of being inducted he was indicted* and convicted. While the appeal was pending it appears that Teresi was at liberty. On affirmance of his conviction and sentence and the mandate being filed in the district court, "apparently by arrangement with the marshal, defendant was to surrender at noon March 28, 1973, to begin his sentence." *Teresi*, 484 F.2d at 896. On March 28, 1973, Teresi filed his motion for reduction of sentence. The deceased judge who had sentenced Teresi to the three year term had also denied a request for probation.

Judge Perry, who was assigned to the case, on hearing the motion, suspended the sentence and placed Teresi on a three year probation under the following conditions:

First that he seek custody of his minor daughter and support her during the period of probation; second that he shall spend six months in the custody of the Attorney General of the United States beginning on such date as this Court shall fix and determine during said period of probation provided however that if this Court is satisfied with defendant's conduct while on probation and does not order defendant to be so committed for six months period before September 27, 1975, then on that date defendant's probation shall be terminated and the condition of spending 6 months in the custody of the Attorney General of the United States shall automatically be waived and become null and void.

*Teresi*, 484 F.2d at 896. The judge's probation order was entered March 28, 1973. Within a week, the government responded by moving to vacate Judge Perry's order, and eventually managed to present the motion to another judge of the same district, Judge Austin.[14] Judge Austin conducted a hearing and, concluding that Judge Perry's order of probation was void, vacated it as requested by the government. Judge Austin entered his own order of April 17, 1973, which left almost intact the three year term of incarceration; he did reduce it to two years and eleven months, thereby giving Teresi credit for *"the one month* defendant *had served on probation."* *Teresi*, 484 F.2d at 897.

The circuit court first concluded and held as to the jurisdictional issue:

The orders directly before us on appeal are those entered April 17. It will be seen, however, that because of our view with respect to double jeopardy resulting from the imposition of sentence of imprisonment after service of a period of probation had begun, the critical question is whether the March 28 order is void.

Neither the lapse of time nor affirmance of the original judgment waived the district court of jurisdiction to suspend the execution of sentence and place the defendant on probation. *Kriebel v. United States*, 10 F.2d 762 (7th Cir.1926); *White v. Steigleder*, 37 F.2d 858 (10th Cir.1930).

Such jurisdiction would have been lost had defendant begun service of his sentence. *Cook v. United States (United*

---

**14.** Teresi had first presented his motion to Judge Parsons, who was an "emergency judge," but Judge Parsons declined to hear it. An "Executive Committee" of the Seventh Circuit Court then assigned it to Judge Austin who, being away on vacation, had made arrangements with Judge Perry to cover for him.

*States v. Murray)*, 275 U.S. [347], 48 S.Ct. 146, 72 L.Ed. 309 (1928).

[T]he district court had jurisdiction on March 28 to stay execution of the sentence and place defendant on probation. *Teresi*, 484 F.2d at 897. The court observed an ambiguity in the sentence initially imposed, and resolved it:

> Giving paramount effect to the references to three years as the term of imprisonment and as the term of probation, the sentence could have been expressed as a sentence of imprisonment for three years, execution suspended, and defendant placed on probation for three years.
>
> In any event, the court's intention that defendant need not necessarily be confined at all, and that he be placed on probation is manifest and paramount. Although the ambiguities require that the sentence prescribed on March 28 be corrected, they did not render it void.

*Teresi*, 484 F.2d at 898.[15]

Significant to Peltier's appeal, and validating his citing *Teresi* to the district court, is the *ratio decidendi* of the Seventh Circuit Court of Appeals:

> Judge Perry had reconsidered Judge Napoli's original denial of probation and had chosen a different result. Any restraint with which one judge approaches reconsideration of a decision made in the same case by another judge of his court is a principle of comity and not a limitation upon jurisdiction. *Bowles v. Wilke*, 175 F.2d 35, 37 (7th Cir.1949). Could Judge Austin reconsider Judge Perry's decision, and impose a more onerous sentence? We think *no more onerous sentence could be imposed once defendant began to serve his period of probation under the March 28 order.*
>
> 'It is a well settled general rule that increasing a sentence after the defendant has commenced to serve it is a violation of the constitutional guaranty against double jeopardy.' *United States v. Sacco*, 367 F.2d 368, 369 (2nd Cir.1966), and cases cited therein.

Of course probation is subject to revocation, and actual confinement may result therefrom. 18 U.S.C. §§ 3651, 3653. Such confinement as a result of revocation does not violate the fifth amendment. But we think that, short of revocation, a change from probation, once service thereof has been commenced, to an unsuspended sentence of imprisonment, must, logically, be a violation of the guaranty against double jeopardy.

> In deciding that an order of probation without sentence is appealable, the Supreme Court noted that a *probation order is an abridgement of the defendant's liberty in the public interest and a mode of punishment, though mild and ambulatory. Korematsu v. United States*, 319 U.S. 432, 435, 63 S.Ct. 1124 [1126], 87 L.Ed. 1497 (1943). Probation has been held to constitute punishment, though lenient, for the purpose of determining the question of double jeopardy. *Oksanen v. United States*, 362 F.2d 74, 80 (8th Cir.1966); *Commonwealth v. Vivian*, 426 Pa. 192, 231 A.2d 301, 305 (1967). Defendant began to serve the period of his probation when he reported, apparently March 28, to the probation officer and the officer accepted technical custody. *Pugliese v. United States*, 353 F.2d 514, 516 (1st Cir.1965).

> Reversing the April 17 orders would restore the March 28 orders to force. The ambiguities of that order, however, call for correction. On remand, the district court should correct it so that its terms are clear and it is consistent with 18 U.S.C. § 3651. It should be no more onerous than a sentence of imprisonment for three years with execution suspended and defendant placed on probation for a period of three years, with the conditions concerning defendant's daughter as now provided. It may be made less onerous.

*Teresi*, 484 F.2d at 899 (emphasis supplied).

One of the three judges comprising the panel in *Teresi* was the Hon. Robert A. Sprecher. He also sat in the case of *Unit-*

---

**15.** Not germane to the circumstances here before us, the court saw no merit in the government's contention that a retired judge, Judge Perry, was not cloaked with authority due to his retirement.

*ed States v. Dorszynski,* 484 F.2d 849 (1973); the opinion issued in that case five weeks prior to *Teresi.* The defendant Dorsynski had pleaded guilty to a charge of possessing LSD, and was "sentenced to the custody of the Attorney General for a period of one year, ninety days of which were to be served in a jail-type institution. The execution of the remainder of the commitment was stayed and the petitioner was placed on probation for a period of two years following his jail sentence." *Dorszynski,* 484 F.2d at 856. While serving his sentence he filed a series of motions, one of which alleged that the special agent induced his guilty plea by lying to him as to what he would gain thereby. Both the agent and Dorsynski testified at the hearing regarding such promises:

> The trial judge indicated that he believed that the petitioner had testified falsely. He denied the motions and then requested counsel to show cause why the probation should not be terminated for lying under oath. After defense counsel argued against this action, the judge terminated the petitioner's probation and committed him to custody. This court ordered the release of the petitioner on bail pending appeal.

*Dorszynski,* 484 F.2d at 850.

The 7th Circuit panel appreciated the district judge's sense of outrage, but reversed the judge's revocation of probation:

> It is evident from the record that the judge determined that the petitioner was guilty of perjury, an offense punishable under 18 U.S.C. § 1621. Although the petitioner was not formally charged with that offense nor afforded a trial to determine his guilt, he was in a very practical sense convicted—in the mind of the judge—and punished by the revocation of his probation.
>
> The only condition of the petitioner's probation prescribed at the time of sentence that is relevant was that he should 'refrain from violation of any law [federal, state, and local].' rule 32(f) provides that probation should be revoked only after a hearing 'at which the defendant shall be present and appraised of the grounds on which such action is pro-

posed.' It is highly questionable whether the procedure by the rule was observed even in a rudimentary sense in the situation before us. But bypassing that and assuming that the petitioner did testify falsely, such conduct did not violate any of the specified conditions of his probation. Only upon being accused of and convicted of perjury in accordance with procedural due process would the petitioner have violated the condition of probation referred to above.

> We appreciate the sense of outrage that the district judge apparently experienced upon becoming convinced that the petitioner had not testified truthfully. False swearing, however, not only is a serious offense, legally and morally, but also its proof must be established, if legal consequences are to result, by procedures that fully comport with due process.

> . . . .

> Were probation terminable upon a judge's summary determination in a post-conviction proceeding that the probationer had testified falsely, the chilling effect of such a practice upon the pursuit of post-conviction remedies is quite apparent.

*Dorszynski,* 484 F.2d at 852. Although this case does not have any substantial bearing as to a court's lack of jurisdiction to increase the severity of a sentence once it has been imposed and execution of any part of it has commenced, it does bear heavily upon the consideration to be accorded to a probationer's *alleged* criminal guilt while serving his probation. Thus viewed, especially on review of a trial court's granting a state's motion for summary judgment dismissing an incarcerated defendant's petition for post-conviction relief, it should have been taken into account where the district court accepted as a fact that Peltier, by reason of the Child Protective hearing and Decree of Termination of Parental Rights, was guilty of violating the terms of his probation. *Peltier was as much entitled to have his guilt of child molestation established in a criminal proceeding as was the defendant Dorsynski.*

Chief Judge Coffin authored the panel's opinion in *United States v. Bynoe*, 562 F.2d 126 (1st Cir.1977). The district court, responding to the entry of defendant's guilty plea to the charge of acting as attorney before the Immigration and Naturalization Service (in a proceeding wherein the United States had a direct and substantial adverse interest and the defendant was employed by the government, "suspended imposition of sentence and placed [defendant] on probation for one month." *Bynoe*, 562 F.2d at 127. One week later the court, feeling that it had been misled as to the multiplicity of such happenings like the one which led to the charge and guilty plea, called a hearing to reconsider the disposition earlier made in light of the information of which it had theretofore but a paucity. "The court thereupon vacated its order suspending imposition of sentence and imposed a fine of $2500.00, which it conceded to be a more severe disposition." *Bynoe*, 562 F.2d at 128.

In his opening, Judge Coffin preliminarily dealt with the statutory provision and distinctions, 18 U.S.C. § 3651, and after citing *Korematsu v. United States*, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943), noted that *"probation is nonetheless a punishment imposed on the defendant, albeit a mild one."* *Bynoe*, 562 F.2d at 128 (emphasis added). Following that he dealt in depth with increasing a defendant's sentence versus the constitutional right to not be subjected to double jeopardy:

> The general rule is that an increase in sentence after the defendant has commenced serving his punishment is a violation of defendant's right not to be subject to double jeopardy. *See United States v. Turner*, 518 F.2d 14, 15 (7th Cir.1975) and cases cited therein; *United States v. Bowens*, 514 F.2d 440, 441 (9th Cir.1975); *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943). Since *probation is a form of punishment,* the guaranty against double jeopardy will attach as soon as a defendant, placed on probation under a suspended sentence, begins to serve his period of probation. *United States v. Teresi*, 484 F.2d 894,

898–99 (7th Cir.1973); *Oksanen v. United States*, 362 F.2d 74, 80 (8th Cir.1966); *United States v. Rosenstreich*, 204 F.2d 321 (2d Cir.1953). There appears to be no statutory basis or policy justification for treating the commencement of probation differently because the imposition of sentence rather than the execution of sentence was suspended. Indeed, it seems *that the only difference contemplated by the statute is that if imposition of sentence is suspended, the court may, upon revocation of probation, impose any sentence it might originally have imposed,* whereas *if sentence is imposed and execution suspended, the sentence may not be increased when probation is revoked.* See *Roberts v. United States*, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943). While in the present case it may appear that the serving of a few days probation has such a minimal effect on a defendant that there is no injustice done by altering sentence, we can easily conceive of circumstances in which a court might attempt to increase the defendant's punishment after months or years of probation had been served. A formal rule against any increase in penalty after service of probation has commenced will prevent any such occurrences and insure the defendant the requisite degree of finality in the disposition of his case.

*Bynoe*, 562 F.2d at 129 (emphasis added).

The "difference," as explained by Judge Coffin, is exactly the same difference which Justice Bakes pointed out in his *Pedraza* opinion, above, and which has again been addressed in this opinion. Judge Coffin obviously saw that the increasing of a sentence imposed upon a defendant, any part of which sentence had been put into execution, ran head-on into the fifth amendment's prohibition against subjecting a defendant to double jeopardy. The panel vacated the judgment of the district court, directing that proceedings on remand be in accordance with the opinion.

One score plus one year ago the Supreme Court of the United States handed down a monumental decision which made the fifth

amendment to the United States Constitution applicable to the states, and since that time, subjecting a person to double jeopardy has been no more palatable in state judiciaries than in the federal courts. The court wrote:

> Recently, however, this Court has 'increasingly looked to the specific guarantees of the [Bill of Rights] to determine whether a state criminal trial was conducted with due process of law.' *Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967). In an increasing number of cases, the Court 'has rejected the notion that the Fourteenth Amendment applies to the States only a "watered-down, subjective version of the individual guarantees of the Bill of Rights * * *."' *Malloy v. Hogan*, 378 U.S. 1, 10–11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964). Only last Term we found that the right to trial by jury in criminal cases was 'fundamental to the American scheme of justice,' *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968), and held that the Sixth Amendment right to a jury trial was applicable to the States through the Fourteenth Amendment. For the same reasons, we today find that *the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment.* Insofar as it is inconsistent with this holding, *Palko v. Connecticut* [302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937)] is overruled.
>
> *Palko* represented an approach to basic constitutional rights which this Court's recent decisions have rejected. It was cut of the same cloth as *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), the case which held that a criminal defendant's right to counsel was to be determined by deciding in each case whether the denial of that right was 'shocking to the universal sense of justice.' *Id.*, at 462, 62 S.Ct., at 1256. It relied upon *Twining v. New Jersey*, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908), which held that the right

against compulsory self-incrimination was to an element of Fourteenth Amendment due process. *Betts* was overruled by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Twining*, by *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Our recent cases have thoroughly rejected the *Palko* notion that basic constitutional rights can be denied by the States as long as the totality of the circumstances does not disclose a denial of 'fundamental fairness.' Once it is decided that a particular Bill of Rights guarantee is 'fundamental to the American scheme of justice,' *Duncan v. Louisiana, supra,* [391 U.S.] at 149, 88 S.Ct., at 1447, the same constitutional standards apply against both the State and Federal Governments. *Palko's* roots had thus been cut away years ago. We today only recognize the inevitable.

The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence. *See Bartkus v. Illinois*, 359 U.S. 121, 151–155, 79 S.Ct. 676, 697, 3 L.Ed.2d 684 (1959) (Black, J., dissenting). As with many other elements of the common law, it was carried into the jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his Commentaries. '[T]he plea of *autrefois acquit*, or a former acquittal,' he wrote, 'is grounded on its universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offense.' Today, every State incorporates some form of the prohibition in its constitution or common law. As this Court put it in *Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), '[T]he underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense,

thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly 'fundamental to the American scheme of justice.' *The validity of petitioner's larceny conviction must be judged,* not by the watered-down standard enunciated in *Palko,* but *under this Court's interpretations of the fifth amendment double jeopardy provision.*

*Benton v. Maryland,* 395 U.S. 784, 794–96, 89 S.Ct. 2056, 2062–63, 23 L.Ed.2d 707 (1969) (emphasis added).

With the applicable prevailing law spread out before us, the following conclusions are self-evident. First, there are no prior Idaho cases where double jeopardy has been asserted and discussed in the context of a district court's revocation of probation and attendant ensuing resentencing with an increase in severity of the probationer's previously imposed sentence. No such Idaho cases appear to have been reviewed in light of *Benton v. Maryland,* wherein the United States Supreme Court overruled *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), and ruled that the fifth amendment to the Constitution of the United States is applicable to the states via the fourteenth amendment.

We do recognize that there have been cases in this Court which, although not in the sense of resentencing following revocation of probation, have recognized the double jeopardy provisions of the statutory law and constitutions of both the United States and Idaho.[16] These cases provide that even though a criminal defendant could be convicted of two or more crimes for conduct proscribed under two or more statutes, he could not be sentenced for more than one crime unless there were elements in the conviction of a second or third crime which

were not contained in the initial crime for which the defendant was convicted.

In *State v. Lewis,* 96 Idaho 743, 536 P.2d 738 (1975), Justice Bakes, writing for a unanimous court, held that the district court had erroneously granted a defendant's motion to dismiss the charges, from which the state had appealed. After reviewing the evidence which had been presented against Lewis, the conclusion was reached that had the case gone to the jury, and had the jury returned a verdict of guilty on the kidnapping count (another count was forcible rape), the conviction would have been sustained. But the Court then noted why it could not reverse and remand for a new trial:

Although the trial judge erroneously dismissed the charges against these two defendants, the Idaho Constitution, Article 1, § 13, which provides that '[n]o person shall be twice put in jeopardy for the same offense,' prevents the retrial of the defendants on either the kidnapping or rape charges. Similarly, the Fifth Amendment to the Constitution of the United States which provides that 'nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb,' which in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), was held to be applicable to the states through the Fourteenth Amendment to the United States Constitution, prevents the retrial of these defendants. The dismissal of the kidnapping charges was based upon an evaluation of the evidence, albeit an erroneous evaluation, and having once had the factual issues involved in the kidnapping charge resolved in their favor the defendants may not be retried. It is unclear upon what basis the rape charges were dismissed, whether they were dismissed upon an erroneous evaluation of the evidence or upon an erroneous interpretation of the law, but because the dismissals might have been based upon a factual determination favorable to the defendants they cannot be retried upon the

---

16. "No person shall be twice put in jeopardy for the same offense." Idaho Constitution, art. 1, § 13.

rape charges. *United States v. Jenkins*, [420] U.S. [358], 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). Jeopardy had long since attached to these proceedings and in a jury trial, as this was, a termination of the proceedings by the judge upon a Rule 29(a) motion because 'the evidence is insufficient to sustain a conviction' is a factual determination of innocence favorable to the defendant which for double jeopardy purposes must be equated to a jury verdict of 'not guilty'; therefore, the defendants cannot be retried because of the double jeopardy clauses of the Idaho and United States Constitutions. *See United States v. Jenkins, supra, United States v. Wilson*, [420] U.S. [332], 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

*State v. Lewis*, 96 Idaho at 750, 536 P.2d at 745.

Another case decided three months earlier found the Court not entirely unanimous. *Stone v. Brusseau*, 96 Idaho 558, 532 P.2d 563 (1975). The author of the majority opinion, Justice Shepard, joined by Justices McQuade and McFadden, recognized the provisions of I.C. § 18–301. Justice Shepard saw the provisions of the fifth amendment to the United States Constitution as differing from the language of art. 1, § 13 of the Idaho Constitution. The three opinions in that case provide interesting reading. The net result of the majority holding was to uphold two *prosecutions*, notwithstanding the provision of I.C. § 18–301, but to vacate the earlier imposed lesser sentence of ten years and let stand the second sentence of fourteen years. Justice Donaldson appears to have had the best grasp on double jeopardy as expressed in his belief that the prohibition of double jeopardy is against a successive prosecution, where a jury has convicted (or acquitted) and a sentence has been imposed.

Apparently the last and most recent double jeopardy case reaching this Court was *State v. Alanis*, 109 Idaho 884, 712 P.2d 585 (1985), where the appealed ruling was the grant of a suppression order. Justice Shepard concurred in the proposed majority opinion authored by Justice Bakes; Justices Donaldson, Huntley, and I wrote separately, but cumulatively reached a majority

holding on the underlying and foremost issue of double jeopardy. In the plurality opinion which I authored, ten landmark cases from the Supreme Court of the United States were reviewed, and were followed by a synopsis of eleven double jeopardy cases handed down by this Court starting with *State v. Randolph*, 61 Idaho 456, 102 P.2d 913 (1940). In *Alanis* the majority held that:

It is clear that the dismissal here not only 'might have been based upon a factual determination favorable' to Alanis, but was so based by reason of the prosecutor's evaluation of the sufficiency of his remaining evidence. Accordingly, she cannot be retried, and a majority of this Court so holds.

Idaho statutory law also prohibits the state from retrying Alanis. I.C. § 19–1719 reads as follows: 'When the defendant is convicted or acquitted, or has once been placed in jeopardy upon an indictment, the conviction, acquittal or jeopardy is a bar to another indictment for the offense charged in the former, or for an attempt to commit the same, or for an offense included therein, of which he might have been convicted under that indictment.' I.C. § 19–1718 defines an acquittal as follows: 'Whenever the defendant is acquitted of the same offense, notwithstanding any defect in form or substance in the indictment on which the trial was had.' It is readily apparent that an erroneous decision on the merits is of no consequence in determining whether a defendant can be retried. The statute makes no exceptions: so long as the defendant was acquitted, and the reason is a failure of sufficient evidence to convict the defendant, the state cannot retry him or her for the same offense. Therefore, on statutory grounds, we hold that Alanis cannot be retried on the matter upon which she was charged and acquitted.

*Alanis*, 109 Idaho at 899, 712 P.2d at 591 (relying upon and citing to *State v. Lewis*, 96 Idaho 743, 750, 536 P.2d 738, 745).

One of those eleven opinions, and much to this Court's credit, was the unanimous

decision in *State v. Gibbs*, 94 Idaho 908, 500 P.2d 209 (1972), where the Court was confronted with exactly the same issue which was decided in *Fain v. Duff*, 488 F.2d 218 (5th Cir.1973), discussed above at page 460–61, 808 P.2d at 379–80, and the same issue as in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). This Court's opinion in *Gibbs* preceded *Fain v. Duff* by one year and the opinions in *Breed* by, respectively, three and two years, and reached the exact same result.

The clear message coming from all of the cases discussed to this point is that a court does have authority to *reduce* a sentence which has been imposed, which authority in Idaho is both statutory and, so I also believe, inherent. Double jeopardy, however, is an absolute bar standing in the way of a district court *increasing* the sentence which it has previously imposed upon a criminal defendant and which has been placed in execution. It is abundantly clear that *increasing* the sentence necessarily involves the imposition of a second sentence for the very same criminal conduct which brought about the first sentence imposed, which had placed the defendant in jeopardy, *i.e.*, prior jeopardy.

Another clear message under the existing state of the law is that sentencing a defendant to a term of probation *is* a sentence. Moreover, viewing the circumstances attached to the probation in light of the pronouncements of the Supreme Court of the United States, incarceration is incarceration, no matter how eleemosynary the court's intent in doing so, and hence is punishment, as is inescapably true of the infliction of punishment carried out in execution of the sentence imposed. Such is wholly in accord with this Court's holding in *State v. Pedraza*, 101 Idaho 440, 614 P.2d 980, wherein was noted the distinction between withholding judgment and imposition of sentence, on the one hand, and not withholding but imposing judgment with execution thereof suspended. The federal cases discussing these alternatives, and execution thereof having commenced, make it clear that incarceration, a drastic penalty inflicted where a court has spoken in terms of probation, is punishment.

Applying the foregoing to the instant case, it is observed that Peltier's first sentence was to sixty days incarceration in the Nez Perce County jail, and consecutive thereto the sentence imposed committed him to the custody of the Idaho State Board of Corrections to serve a five year (less the sixty days incarceration time) term of probation under somewhat onerous terms which greatly circumscribed his liberty.

Without delving into the district court's grounds and reasons for revoking the probation which had been created in the initial sentence imposed, it is clear that the double jeopardy prohibition against *increasing* a sentence once imposed precluded Judge Maynard from fashioning and imposing a new sentence which increased the previous five year commitment to the State Board of Corrections by adding an additional *fifteen years!*

Under *Pedraza*, it should be concluded that the district court was in error in believing that it had the authority to restructure the initial sentence which was imposed on Peltier on June 23, 1982. That sentence committed [17] Peltier to the Idaho State Board of Corrections for five years, but execution of that imposed sentence was suspended. That sentence also imposed on him the status of probationer for those five years. The order of the court that Peltier serve sixty days in the Nez Perce County jail was also a part of the sentence imposed, and it was put into execution immediately. Following the sixty days of incarceration, Peltier then embarked on his term of probation, which was in further execution of the court's sentence of a five year term, but formal entry of judgment of conviction was suspended. When the court revoked that probation, whether correctly or in error being of no moment, it was barred by the doctrine of double jeopardy from meting out to Peltier a new sentence greater in severity than that first imposed.

---

**17.** In paragraph (2) of that order the court recognized the import of the word "custody" by stating as to the commitment "that the probationer shall be under the *legal custody and control* of the Idaho State Board of Corrections." R. 9 (emphasis added); *See* I.C. § 16–1602 for a statutory definition of "commit."

The sentence imposed on June 23, 1981, was for a crime (to which Peltier entered a guilty plea) allegedly to have been committed on April 26, 1982. The new sentence purportedly imposed on March 28, 1983, was also for that same crime committed on April 26, 1982. Double jeopardy precludes not only two prosecutions for the same crime but also two sentences for the same crime. Although it is clear that a court is not constitutionally precluded from decreasing the severity of a sentence which has been imposed, it is precluded from increasing the severity. *See* I.C.R. 35. The court may reduce a sentence within 120 days after the sentence has been imposed or within 120 days after the court releases retained jurisdiction. The court may also reduce a sentence upon revocation of probation as provided by law. However, the district court was not cloaked with authority to ignore a first sentence which had been placed into execution and render a sentence more severe than the first one imposed, in this case a five year maximum indeterminate sentence replaced by a sentence of twenty years, even though the execution of the latter sentence be initially suspended, as was equally true of the first sentence.

According to my computations, the time of confinement served by Peltier under the two sentences totals more than one year beyond the legal sentence of the five year commitment to the custody of the State Board of Corrections on June 23, 1982. Peltier, having served out that sentence and more, is entitled to be discharged from the custody of the State Board of Corrections. The Court should vacate and hold for naught the district court's order of March 28, 1983, insofar as it ordered that "defendant be punished by being placed in the custody of the Idaho State Board of Corrections for the maximum indeterminate term of twenty years (20), the time of this imprisonment and confinement to commence to run on the 16th day of February 1983, and that the defendant stand

committed until said sentence is complied with." The Court should also vacate the district court's September 19, 1985, order reimposing the suspended sentence insofar as the same purports to "hereby reimpose its sentence of custody to the Idaho State Board of Corrections for a maximum indeterminate term not to exceed twenty (20) years, said sentence to commence to run on September 11, 1985." Note is taken, without comment, that as to the Order of September 19, 1985, and the Order of March 28, 1983, that the court purposefully did not give Peltier any credit for time previously served, and that the district court relied on the collateral determination of Judge Perry in a civil action under the Child Protective Act initiated by the Department of Health & Welfare seeking the termination of the child-parent relationship, as valid evidence that Peltier was *guilty* of child molestation and hence in violation of the terms of his probation. This is highly questionable, but more elaboration is unnecessary and futile. The harm has been irretrievably done, that is, if one accepts the philosophy that a convicted felon is fair game.

There remain other very serious issues raised by Peltier, some of which include the failure of the district court to hold an evidentiary hearing on receiving Peltier's Petition for Post-conviction Relief, and the failure of the district court to provide Peltier with the transcripts which were asked for and which the court initially agreed to provide, notwithstanding that the district court's memorandum decision audaciously quoted from a transcript of the March 16, 1983, hearing (pages 11–14). R. 101. Peltier's post-conviction petition specifically requested that he be furnished transcripts of court proceedings held on June 23, 1982, March 16, 1983, and September 18, 1985, as provided by I.C. § 19–4904.[18] Because of these failures on the part of the district court, I concur with the majority in the vacating of the summary disposition of the post-conviction relief petition and the remand for an evidentiary hearing, but dis-

**18. 19–4904. Inability to pay costs.**—If the applicant is unable to pay court costs and expenses of representation, including stenographic, printing, witness fees and expenses, and legal servic-

es, these costs and expenses, and a court-appointed attorney shall be made available to the applicant in the preparation of the application, in the trial court, and on appeal, and paid, on

sent from the district court's order imposing the twenty year sentence.

Those who read our opinions will be gratified to observe that the Court comes up with the conclusion that Peltier received short shrift indeed by the manner in which his petition for post-conviction relief was mistreated. As a result Peltier will get another try. The problem with that disposition, however, is that, although Peltier may now get his day in court, a far larger concern is that the majority opinion upholds increasing Peltier's confinement from five years (which he has already served, and more) to twenty years, all supposedly because of the terrible violation of his probation terms which happened when he went to his wife's house to fix her car, and the children were in that same vicinity.

order of the district court, by the county in which the application is filed.